UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

WALTER GREEN, III,

        Plaintiff,

v.                                      Action No. 2:16cv421

RENTGROW, INC., and

TRANS UNION, LLC,

        Defendants.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

By order of reference dated September 15, 2016, ECF No. 10, this case was referred to the undersigned United States Magistrate Judge for a report and recommendation on defendant RentGrow, Inc.'s motion to dismiss, ECF No. 6, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, the Court **RECOMMENDS** that defendant's motion to dismiss be **DENIED**.

## I.    PROCEDURAL HISTORY

On July 8, 2016, plaintiff Walter Green, III ("Green"), filed a complaint against defendants RentGrow, Inc. ("RentGrow") and Trans Union, LLC ("Trans Union"), seeking relief for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Compl., ECF No. 1. The complaint alleges that RentGrow "obtain[ed] and us[ed] the Plaintiff's consumer

reports without a permissible purpose to do so," in violation of 15 U.S.C. § 1681b(f) (count one).[1] Compl. ¶ 14. Green claims to have suffered "actual damages, including a diminished credit score," as a result of RentGrow's conduct. Compl. ¶ 15. The complaint further alleges that RentGrow's conduct was willful, and seeks punitive damages pursuant to 15 U.S.C. § 1681n. Compl. ¶ 15. Green also argues in the alternative that RentGrow was negligent, entitling him to recover under 15 U.S.C. § 1681o. Compl. ¶ 16.

On August 23, 2016, RentGrow moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Mot. Dismiss, ECF No 6. RentGrow argues that Green lacks standing to pursue the claim. *Id.* Green filed a memorandum in opposition to the motion to dismiss, ECF No. 8, and RentGrow replied thereto, ECF No. 9. The motion to dismiss is now ripe for consideration.

## II.   FACTUAL BACKGROUND

The complaint alleges the following facts, among others. Green resides in Virginia and, at all times relevant to the complaint, was a "consumer" as defined by section 1681a(c) of the FCRA. Compl. ¶ 3. RentGrow is a foreign corporation doing business in Virginia and, at all times relevant to the complaint, was a "user" as defined by the FCRA. Compl. ¶ 6. In April 2016, Green's credit-monitoring service alerted him that, on or around September 25, 2015, RentGrow received a copy of his Trans Union credit report. Compl. ¶ 7. Green "immediately became extremely concerned" that identity thieves had accessed his personal information. Compl. ¶ 8. Green learned, upon investigation, that RentGrow accessed his credit report in

---

[1] The complaint also alleges that co-defendant Trans Union committed other FCRA violations (counts two and three). Compl. ¶¶ 18–27. Count II alleges that Trans Union "provid[ed] the Plaintiff's consumer reports to an entity that lacked a[n] FCRA permissible purpose" in violation of 15 U.S.C. § 1681b. Compl. ¶ 19. Count III alleges that Trans Union "fail[ed] to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b" in violation of 15 U.S.C. § 1681e(a). Compl. ¶ 24.

relation to "a rental application for an apartment complex located in Wisconsin." Compl. ¶ 9. The complaint states that Green did not apply for an apartment in Wisconsin, and that he does not live in Wisconsin. Compl. ¶ 10. Further, Green asserts that he "never gave Defendant RentGrow permission to access his credit report, nor did Defendant RentGrow have a permissible purpose under the FCRA to obtain the Plaintiff's credit reports in conjunction with this access of his credit report." Compl. ¶ 11.

Section 1681b of the FCRA lists the circumstances under which a consumer reporting agency may furnish a consumer report. 15 U.S.C. § 1681b(a). The same section also prohibits a person from "us[ing] or obtain[ing] a consumer report unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section" and the prospective user appropriately certifies the purpose. 15 U.S.C. § 1681b(f).

## III.   LEGAL FRAMEWORK

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a claim based on a court's lack of subject-matter jurisdiction. *A.W. ex rel. Wilson v. Fairfax Cty. Sch. Bd.*, 548 F. Supp. 2d 219, 221 (E.D. Va. 2008). As provided by Article III of the Constitution, federal courts have subject-matter jurisdiction over justiciable cases or controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). The doctrine of standing is one component of justiciability, "serv[ing] to identify those disputes which are appropriately resolved through the judicial process." *Id.* at 560 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The standing issue – that is, "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf," *Warth v. Seldin*, 422 U.S.

3

490, 498–99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)), presents "a threshold question in every federal case." *Id.* at 498.

> In order to satisfy the standing requirements of Article III of the Constitution, a plaintiff must demonstrate that: (1) [he] has suffered an injury in fact; (2) the asserted injury in fact is fairly traceable to, or caused by, the challenged action of the defendant; and (3) it is likely rather than just conjectural that the asserted injury in fact will be redressed by a decision in the plaintiff's favor.

*Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)).

The Supreme Court has defined the first element of standing – an "injury in fact" – as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotations omitted). In a recent decision addressing FCRA claims, the Court further explained the contours of the injury-in-fact requirement. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

In *Spokeo*, the plaintiff, Robins, brought a class-action suit against the operator of a website that allows users to search for personal information about other individuals. *Id.* In response to an inquiry from a user, the website searches multiple databases and generates a profile of the inquiry's subject. *Id.* at 1546. The profile can contain information about an individual's "address, phone number, marital status, approximate age, occupation, hobbies, finances, shopping habits, and musical preferences." *Id.* Robins discovered that his profile contained inaccurate information about his age, marital status, education, and employment, among other things. *Id.* Robins alleged that the website operator willfully failed to comply with several FCRA provisions relating to the use of consumer reports. *Id.* The district court dismissed Robins's complaint, finding that he failed to properly plead an injury in fact for

4

purposes of standing. *Id.* The Ninth Circuit reversed, concluding that Robins did sufficiently allege such an injury. *Id.* The Supreme Court vacated and remanded. *Id.*

The Court emphasized that "an injury in fact must be both concrete *and* particularized." *Id.* at 1548. In order for an injury to be "concrete," the injury "must actually exist." *Id.* Both tangible and intangible injuries can be concrete. *Id.* at 1549. When determining whether an intangible harm constitutes injury in fact, courts should consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (citing *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)). The judgment of Congress is also "instructive and important," as Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578). A plaintiff, however, does not automatically satisfy the injury-in-fact requirement whenever Congress has granted a statutory right, because "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Accordingly, a plaintiff cannot satisfy the injury-in-fact requirement by "alleg[ing] a bare procedural violation, divorced from any concrete harm." *Id.* Still, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute an injury in fact." *Id.* In such situations, a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* Further, "the risk of real harm" could also satisfy the concreteness requirement. *Id.*

## IV.  **ARGUMENTS OF THE PARTIES**

RentGrow argues that Green has failed to allege an injury sufficient to confer standing. Def.'s Brief Supp. Mot. Dismiss ("Def. Brief"), ECF No. 7. In particular, RentGrow argues that

Green alleges a "bare procedural violation" of the FCRA without demonstrating that the procedural violation caused Green a concrete injury; therefore, according to RentGrow, Green's allegations fall short of the injury-in-fact standard as explained in *Spokeo*. Def.'s Reply Supp. Mot. Dismiss ("Def. Reply"), ECF No. 9 at 1–2. In addition, although Green claims his credit score diminished as a result of RentGrow's alleged conduct, RentGrow argues that "a mere allegation of 'diminished credit score' is insufficient to establish harm." Def. Reply at 9. To support this argument, RentGrow cites two district court cases from outside the Eastern District of Virginia. Def. Brief at 4–5; Def. Reply at 9.

Green argues that the injury-in-fact standard is satisfied because he has suffered "a classic form of cognizable harm: invasion of one's privacy." Pl.'s Opp'n Mot. Dismiss ("Pl. Opp'n"), ECF No. 8 at 7. According to Green's reading of *Spokeo*, "Congress is afforded the discretion to decide what constitutes harm," *id.* at 5, and "one of Congress' enumerated purposes in enacting the FCRA was to protect the confidentiality of consumers' personal information, thereby protecting their right to privacy." *Id.* at 2. In essence, Green contends that the FCRA "creates a legally protected privacy interest in limiting dissemination of consumers' reports" such that "the allegedly impermissible disclosure constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing." *Id.* at 2, 8 (quoting *Witt v. Corelogic Saferent, LLC*, No. 3:15cv386, 2016 WL 4424955, at *12–13 (E.D. Va. Aug. 18, 2016)).

## V.   ANALYSIS

*A.   Invasion of Consumer Privacy*

The complaint itself does not specifically allege that RentGrow's reported FCRA violation resulted in an invasion of Green's privacy. The complaint does state, however, that

Green did not give RentGrow permission to access his credit report. Compl. ¶ 11. Further, the complaint alleges that the credit-monitoring notice triggered concern that Green's personal information had been improperly accessed. Compl. ¶¶ 7–8. In opposition to RentGrow's motion to dismiss, Green explicitly claims to have suffered an invasion-of-privacy harm and argues this position at length.

In *Witt v. Corelogic Saferent, LLC*, a recent FCRA case from this district on standing, the Court addressed a nearly identical situation. 2016 WL 4424955. The plaintiffs in *Witt* alleged in their complaint, as an alternative argument, that the "Defendants furnished Plaintiffs' consumer reports without a 'permissible purpose' in violation of 15 U.S.C. § 1681b(a)." *Id.* at *11. The defendants argued that plaintiffs failed to allege an invasion of privacy because the harm was not pled. *Id.* at *13. The defendants noted that the "[t]he word 'privacy' does not even appear in the Complaint." *Id.* at *13 (quoting Def. Reply at 13). Instead, in opposition to the defendant's motion to dismiss, plaintiffs claimed that the alleged FCRA violation resulted in an invasion of privacy. *Id.* at *12 (quoting Pl. Mem. in Opp. at 24).

The Court concluded that "Plaintiffs need not explicitly plead a claim for 'invasion of privacy' to show that their statutory right to privacy was invaded. . . . An invasion of privacy is inherent in Plaintiffs' claim that their confidential information was improperly disseminated." *Id.* at *13. The Court further explained that pleading an invasion-of-privacy claim actually "would have been futile because Congress, in enacting the FCRA, explicitly preempted suits for invasion of privacy 'except as to false information furnished with malice or willful intent to injure [the] consumer.'" *Id.* (quoting 15 U.S.C. § 1681h(e)); *see also Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001) ("When a consumer brings an action for violation of the disclosure provisions of the FCRA, the Act's purpose of protecting consumer

confidentiality is implicated. In that respect, such cases are akin to invasion of privacy cases under state law—cases where the plaintiff alleges that the defendant unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential.") (collecting cases)). In accordance with *Witt*, this Court concludes that it may review Green's invasion-of-privacy claim.

The Eastern District of Virginia recently addressed the principal question at issue here: whether a plaintiff who alleges a violation of section 1681b(f) of the FCRA has established a concrete harm sufficient to confer standing. *See Burke v. Fed. Nat'l Mortgage Ass'n*, No. 3:16cv153, 2016 WL 4249496 (E.D. Va. Aug. 9, 2016). In *Burke*, the plaintiff claimed that the Federal National Mortgage Association violated section 1681b(f) "by unlawfully obtaining her credit report under the false pretense of an 'account review,' even though no account existed." *Burke*, 2016 WL 4249496, at *1. The plaintiff alleged three injuries, including invasion of privacy. *Id.* at *2. The defendant moved to dismiss for lack of standing, arguing that the plaintiff did "not allege[] a concrete injury but only a bare procedural violation" insufficient to establish an injury in fact. *Id.* at *1–2.

Guided by *Spokeo* and *Thomas v. FTS USA, LLC*, No. 3:13cv825, 2016 WL 3653878 (E.D. Va. June 30, 2016), another recent FCRA case addressing a similar standing issue (discussed below), the Court in *Burke* denied defendant's motion to dismiss for lack of standing. *Burke*, 2016 WL 4249496, at *4. The Court concluded that, "[w]hile a close question, at this stage of the litigation, . . . it appears that Plaintiff has alleged a concrete injury-in-fact." *Id.* The Court explained that although the plaintiff did "not allege an obviously tangible harm . . . that does not necessarily mean that her alleged injury is only a bare, technical violation." *Id.* at *3. The Court determined that section 1681b(f) "seem[s] to establish a statutory right to privacy based in one's consumer report," and that such right "appears to be more substantive than

8

procedural." *Id.* at *4 (citing *Thomas*, 2016 WL 3653878, at *7). The Court, therefore, found the reported violation of plaintiff's privacy to be "a concrete harm" and decided that the plaintiff "alleged more than a bare procedural violation" of the FCRA. *Id.*

This Court finds no reason to depart from the holding in *Burke*. In this case and in *Burke*, the plaintiff alleged that the defendant violated section 1681b(f) of the FCRA by obtaining plaintiff's credit report without a permissible purpose. Compl. ¶ 14; *Burke* at *2. As a result of the alleged violation, the plaintiff suffered an injury in fact – an invasion of the consumer's right to privacy – sufficient to confer standing.

This result is consistent with two other post-*Spokeo* cases from this district involving invasion-of-privacy claims based on alleged FCRA violations. First, in *Thomas,* the Court found standing where the plaintiff in a class-action suit alleged that the defendant violated 15 U.S.C. § 1681b(b)(2),[2] which prohibits the procuring of consumer reports for employment purposes absent disclosure to and written authorization from the consumer. The Court found that this subsection "establishes a right to privacy in one's consumer report" and that the protections provided "are clearly substantive, and neither technical nor procedural." *Thomas*, 2016 WL 3653878, at *7. The Court determined that the "allegedly unauthorized disclosure of personal information constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing." *Id.* at *11.

Second, in *Witt v. Corelogic Saferent, LLC*, the Court found standing where the plaintiffs alleged, as an alternative argument, that defendants "furnished Plaintiffs' consumer reports without a 'permissible purpose'" in violation of section 1681b(a) of the FCRA. 2016 WL

---

[2] The plaintiff also alleged violations of section 1681b(b)(3) of the FCRA, which generally provides that, before taking adverse action against a current or prospective employee based on a consumer report, an employee must provide a copy of the report and a statement of consumer rights to the current or prospective employee.

4424955, at *11. Following *Spokeo*'s guidance, the Court evaluated the legislative history of the FCRA, noting that "one of Congress' enumerated purposes in enacting the FCRA was to protect the confidentiality of consumers' personal information, thereby protecting the consumers' right to privacy." *Id.* at *12 (citing 15 U.S.C. § 1681; *Trans Union Corp. v. FTC*, 81 F.3d 228, 234 (D.D.C. 1996)). The Court also explained that "it has long been the case that an unauthorized dissemination of one's personal information . . . is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue." *Id.* (citing Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)). As in *Thomas*, the Court concluded that the "allegedly impermissible disclosure" of the plaintiffs' consumer reports "constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing." *Witt*, 2016 WL 4424955, at *13.

Other district courts have also found that alleged violations of the FCRA give rise to an injury in fact for purposes of standing. *See, e.g.*, *Perrill v. Equifax Info. Servs., LLC*, No. A-14-CA-612-SS, 2016 WL 4572212, at *4 (W.D. Tex. Aug. 31, 2016) (finding that "an invasion of privacy within the context of the FCRA constitutes a concrete harm that meets the injury-in-fact requirements" for standing); *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *5 (N.D. Cal. July 26, 2016) (holding that plaintiff established standing where defendant allegedly "sent restricted information about plaintiff into the world and as such caused injury to plaintiff's privacy interest"); *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 697 (N.D. Ill. 2016) (explaining that "the FCRA grants consumers a legally protected interest in limiting access to their credit reports" and concluding that plaintiff "sufficiently alleged an injury-in-fact by alleging that [the defendant] obtained his credit report without a permissible purpose in violation of [section 1681b(f)] of the FCRA").

In addition, courts have recently found that claims of other similar statutory violations establish an invasion-of-privacy injury sufficient to confer standing. In *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016), the Third Circuit addressed the defendants' alleged failure to comply with statutory rules prohibiting the disclosure of plaintiffs' online activities. The Court determined that "the unlawful disclosure of legally protected information" constituted a concrete injury for purposes of standing. *Id.* at 274. Considering *Spokeo*'s direction to analyze whether the alleged injury in fact "has traditionally been regarded as providing a basis for a lawsuit," *Spokeo*, 126 S. Ct. at 1549, the Third Circuit reiterated its observation from an earlier decision "that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private." *Id.* at 274 (citing *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 134 & n.19 (3d Cir. 2015)).

District courts from within the Fourth Circuit have similarly concluded that an invasion-of-privacy harm meets the injury-in-fact requirement of standing. For example, in *Krakauer v. Dish Network LLC*, 168 F. Supp. 3d 843, 845 (M.D.N.C. 2016), the Court noted that telemarketing calls made in violation of the Telephone Consumer Protection Act "form concrete injuries because unwanted telemarketing calls are a disruptive and annoying invasion of privacy." The Court further decided that "each call created, at a minimum, a *risk* of an invasion of a class member's privacy," which, in accordance with the analysis in *Spokeo*, establishes a concrete injury. *Id.* *See also Mey v. Got Warranty, Inc.*, No. 5:15cv101, 2016 WL 3645195, at *3 (N.D.W. Va. June 30, 2016) (finding that computer-dialed telemarketing calls made in violation of the Telephone Consumer Protection Act cause concrete harms, including the invasion of consumer privacy).

Moreover, the facts in this case are unlike those where courts have indicated that plainitffs failed to allege an injury sufficient for standing purposes. For example, in *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925 (8th Cir. 2016), the Eighth Circuit held that the plaintiff lacked Article III standing where he claimed that a cable company violated its statutory duty to destroy customers' personally identifiable information after the company no longer had reason to retain it. The plaintiff alleged that the failure to destroy such information constituted an invasion of privacy. *Id.* at 927. Following *Spokeo*'s guidance, the Court concluded that the plaintiff alleged only "a bare procedural violation, divorced from any concrete harm." *Id.* at 930 (quoting *Spokeo*, 136 S. Ct. at 1549). The Court reasoned:

> [The plaintiff] does not allege that Charter has disclosed the information to a third party, that any outside party has accessed the data, or that Charter has used the information in any way during the disputed period. . . . Although there is a common law tradition of lawsuits for invasion of privacy, the retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts.

*Braitberg*, 836 F.3d at 930 (citations omitted). In this case, however, Green alleges that RentGrow obtained his credit report unlawfully and that RentGrow never had authorization to access the report. *See* Compl. ¶ 11.

Further, in *Smith v. Ohio State Univ.*, No. 2:15-CV-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016), the Court found that plaintiffs failed to allege a particularized and concrete injury where an employer reportedly violated the FCRA during the process of hiring the plaintiffs. The employer apparently requested consent from the plaintiffs to pull their credit reports and provided plaintiffs with "a disclosure and authorization." *Id.* at *1. The employer, however, "improperly included extraneous information such as a liability release," and plaintiffs claimed that, as a result, "their privacy was invaded and they were misled as to their rights under the FCRA." *Id.* at *1, 4. Because plaintiffs "admitted they did not suffer a concrete consequential

damage as a result of" the alleged violation, the Court found that they did not suffer an injury in fact. *Id.* at *4. Unlike in *Smith*, Green claims an invasion-of-privacy injury where RentGrow obtained his credit report without his permission and without a permissible purpose. Such injury rises above the allegation in *Smith* that the employer provided plaintiffs with additional and perhaps confusing information when pulling their credit reports.

In addition, the harm at issue here is unlike the examples identified in *Spokeo* where a procedural violation of the FCRA would not give rise to a concrete injury. In *Spokeo*, the Court noted that "if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information," the violation may result in no harm because the information may in fact be entirely accurate. 136 S. Ct. at 1550. Further, the Court explained that "not all inaccuracies cause harm or present any material risk of harm" sufficient to confer standing. *Id.* For example, the Court stated, "it is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* The information that RentGrow obtained – Green's credit report – is more substantial and revealing than an inaccurate zip code. Additionally, the invasion of privacy stemming from a violation of section 1681b(f) amounts to "more than a bare procedural violation" of the FCRA. *Burke*, 2016 WL 4249496, at *4.

B.     *Diminished Credit Score*

The Court also finds RentGrow's argument regarding Green's reported decrease in credit score to be unpersuasive. The complaint alleges that Green "suffered actual damages, including a diminished credit score" as a result of RentGrow's conduct. Compl. ¶ 15. RentGrow argues that "a mere allegation of 'diminished credit score' is insufficient to establish harm." Def. Reply at 9. To support this argument, RentGrow cites two district court cases from outside the Eastern District of Virginia: *Young v. Harbor Motor Works, Inc.*, No. 2:07cv31, 2009 WL 187793 (N.D.

13

Ind. Jan. 27, 2009) and *Nowlin v. Avis Budget Grp.*, No. 1:11cv511, 2011 WL 7087108 (M.D.N.C. Dec. 22, 2011) (Report and Recommendation) *adopted by* No. 1:11cv511, 2012 WL 204162 (M.D.N.C. Jan. 24, 2012). Mot. Dismiss at 4–5; Def. Reply at 9.

These cases, however, do not necessarily support RentGrow's position. The courts in *Young* and *Nowlin* granted the defendants' 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Nowlin*, 2011 WL 7087108; *Young*, 2009 WL 187793. The plaintiff in *Young* claimed to have suffered a decrease in credit score as a result of the defendant's unauthorized request for the plaintiff's credit report. *Young*, 2009 WL 187793, at *5. The court noted that the plaintiff did not allege "any actual damages that he suffered as a consumer flowing from the alleged decrease in credit score such as that he was denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit." *Id.* The court further noted that the defendant also failed to allege "non-pecuniary damages such as loss of reputation or physical or mental effects." *Id.* (citations omitted). The court concluded that the plaintiff "failed to allege actual damages as required under the FCRA sufficient to raise the possibility of relief above the speculative level." *Id.* In *Nowlin*, the plaintiff similarly alleged that the defendant's "hard pull" of his credit report "reduc[ed] his credit score." *Nowlin*, 2011 WL 7087108, at *1. The court granted defendant's 12(b)(6) motion, in part because the plaintiff's "alleged decrease in credit score is not sufficient to state a claim for damages." *Id.* at *2.

By citing *Young* and *Nowlin* to support its position that Green's allegation of a decrease in credit score is insufficient to satisfy the injury-in-fact requirement of Article III standing, defendant RentGrow "conflates two separate issues: (1) the merits, whether the Plaintiff has sufficiently stated a claim; and (2) jurisdiction, whether the court has the power to reach the

merits of the Plaintiff's claim." *Wynne v. I.C. Sys., Inc.*, 124 F. Supp. 3d 734, 740 (E.D. Va. 2015). As the Court noted in *Wynne*:

> The Supreme Court has clarified the distinction, finding that: "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [the Plaintiff] could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." Accordingly, whether the Plaintiff has sufficiently pleaded her actual damages is a different inquiry from whether the court has jurisdiction.

*Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). *See also Santangelo*, 162 F. Supp. 3d at 698 ("[The defendant] contends that a reduced credit score, without resulting damages, does not constitute an injury for standing purposes . . . but the cases upon which it relies address the statutory requirement of 'actual damages' under 15 U.S.C.A. § 1681o(a)(1), rather than Article III standing.")

In short, a plaintiff who fails to plead damages sufficient to survive a 12(b)(6) motion to dismiss does not necessarily fail to establish an injury in fact for purposes of standing. Although some courts have decided that an allegation of a decrease in credit score does not sufficiently state a claim for damages, *see, e.g., Nowlin*, 2011 WL 7087108; *Young*, 2009 WL 187793, a decrease in credit score may still establish an injury in fact sufficient to confer standing. *See Santangelo*, 162 F. Supp. 3d at 698 (finding that "a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"). As the Court in *Santangelo* explained:

> Credit scores are of great importance in our economy, and a depleted credit score could affect a consumer in numerous ways, inflicting harm that often may be difficult to prove or quantify. Congress has the power to discourage the needless depletion of consumers' credit scores even when the depleted score cannot be neatly tied to a financial harm. While discovery may well show that [the plaintiff] did not suffer any actual damages as a result of his lower credit score, at this preliminary stage, his allegations are sufficient to establish Article III injury-in-fact.

*Id. See also Diedrich v. Ocwen Loan Servicing, LLC*, No. 15-2573, 2016 WL 5852453, at *4 (7th Cir. Oct. 6, 2016) (finding that plaintiffs alleged an injury for purposes of standing where plaintiffs claimed to have "suffered damage to their credit" and were "forced to pay [the defendant] more money and higher interest rates"); *Nicklaw v. Citimortgage, Inc.*, No. 15-14216, 2016 WL 5845682, at *4 (11th Cir. Oct. 6, 2016) (finding that plaintiff failed to allege a concrete injury, in part because complaint "does not allege that his credit suffered").

## VI.    RECOMMENDATION

Green alleges an injury in fact sufficient to confer standing. For the foregoing reasons, the Court **RECOMMENDS** that RentGrow's motion to dismiss, ECF No. 6, be **DENIED**.

## VII.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that, pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing report and recommendation within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules).

2.    A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

16

The parties are further notified that failure to file timely objections to the report and recommendation will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/

**Robert J. Krask**
**United States Magistrate Judge**
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
November 10, 2016